UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOSEPH WADE HUEBERT,

    Plaintiff,

v.                                        CASE NO. 2:18-CV-761-FtM-MAP

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

## **ORDER**

    This is an appeal of the administrative denial of disability insurance benefits (DIB) and period of disability benefits. *See* 42 U.S.C. § 405(g). In this appeal, Plaintiff contends the ALJ erred by failing to find his upper extremity impairments severe and failing to include limitations in his RFC related to such impairments; by failing to find he met a Listing impairment; by finding he acknowledged he might have substance abuse issues; and by improperly weighing opinions of treating and non-treating medical sources. Plaintiff also asserts the ALJ was not properly appointed under the United States Constitution and lacked properly authority to hear and decide this case. After considering the parties' joint memorandum of law (doc. 26) and the administrative record (doc. 16), I find that the ALJ's decision is not supported by substantial evidence; I remand for further administrative proceedings.

    *A.*    *Background*

    Plaintiff Joseph Wade Huebert was born in 1977 and has a high school education. He has worked since he was 13, mostly as a laborer. His jobs include carpentry; construction; bartending; window-unit air-conditioning installer and servicer helper; and kitchen helper. The relevant time period for DIB purposes is from March 1, 2014, to March 31, 2017 (Plaintiff's date of last insured,

1

or DLI). When asked why he alleges disability beginning March 1, 2014, he explained that is when he "started losing control of [his] body, being able to actually do normal day to day things (R. 95). He testified that he has lost the use of his hands (his hands cramp up with he uses a knife and fork after about three to five minutes), and he has trouble walking (he can walk less than a quarter of a mile due to pain and nerve problems in his knees, ankle, and hip) (R. 99-100). Realizing he was no longer capable of physical labor, he enrolled in online design courses but was unable to complete them due to hand cramps and difficulty sitting in front of his computer (R. 105). He also has a history of depression and had several suicide attempts prior to the alleged onset date (R. 107).

After a hearing, the ALJ found that Plaintiff suffers from the severe impairments of "degenerative disc disease of the cervical spine, status post anterior cervical discectomy and fusion; meniscal tear of the right knee, status post arthroscopic medial meniscectomy; bilateral knee arthritis; traumatic arthritis of the right ankle, status post internal fixation; dyspnea; and depressive disorder" (R. 19). The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 19). The ALJ determined that Plaintiff is not disabled, because he retains the RFC to perform light work except as follows:

> … he could stand and/or walk for four hours in an eight-hour workday; sit for six hours in an eight-hour workday; frequently stoop; occasionally climb ramps and stairs, balance, kneel, crouch, and crawl; and never climb ladders, ropes, or scaffolds. He must avoid concentrated exposure to extreme environmental cold, vibrations, dusts, odors, fumes, and gases, and he must avoid workplace hazards, such as unprotected heights and unshielded rotating machinery. He could perform simple work with a specific vocational preparation (SVP) level no higher than two, and he can frequently interact with supervisors, coworkers, and the public.

(R. 21) With the assistance of a vocational expert (VE), the ALJ found that, with this RFC, Plaintiff could not perform his past relevant work, but could perform jobs existing nationally including final

assembler, food and beverage order clerk, and table worker (R. 28). The AC denied review. Plaintiff, after exhausting his administrative remedies, filed this action.

  B.  *Standard of Review*

  To be entitled to DIB, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3).

  The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations. These regulations establish a "sequential evaluation process" to determine if a claimant is disabled. *See* 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits his ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform his past relevant work; and (5) if the claimant cannot perform the tasks required of his prior work, the ALJ must decide if the claimant can do other work in the national economy in view of his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4).

A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

    C.    Discussion

        *1. upper extremity impairments*

Plaintiff asserts the ALJ erred by failing to find his upper extremity impairment a severe impairment at step two, and by failing to include any limitations related to his hands and arms in his residual functional capacity (RFC) and vocational expert (VE) hypotheticals. Plaintiff acknowledges that this alleged error is harmless at step two, however he asserts that such error is not harmless at the later steps of the sequential analysis. I agree.

At step two, the ALJ found that Plaintiff's degenerative disc disease of the cervical spine and status post cervical discectomy was a severe impairment. However, in reaching his RFC he concluded that Plaintiff was capable of performing light work with no further limitations with regard to his upper extremities. The ALJ opined that the medical evidence established some

4

limitations in functioning but not to the degree alleged by Plaintiff (R. 22). To buttress this conclusion, the ALJ cited 2014 records from Drs. Wirkkula and Whitaker showing negative bilateral shoulder x-rays, unremarkable cervical spine x-rays, and an examination that revealed full range of motion without pain in cervical spine, full symmetrical range of motion of the shoulders without rotator cuff weakness or neurologic abnormality and negative impingement and negative Degos maneuver in the shoulders (R. 22-23). But, the ALJ also discussed Plaintiff's continued complaints in August 2015 of chronic neck and bilateral shoulder pain and decreased range of motion and tenderness of the neck and bilateral hand numbness and tingling (R. 23). While examination revealed 5/5 muscle tone and strength and intact sensation in bilateral upper extremities as well as intact fine motor movements, EMG studies were recommended and revealed chronic bilateral C8 radiculopathies and chronic bilateral C3-C4 radiculopathies or accessory neuropathies without ongoing denervation (R. 556). Plaintiff's symptoms continued and as a result in September 2015, he proceeded with recommended surgical intervention, an anterior cervical discectomy.

Unfortunately, as the ALJ discussed, the medical evidence demonstrates that Plaintiff's upper extremity pain, numbness, and weakness continued despite the surgery. The ALJ mentioned that in February 2016, Plaintiff began physical therapy and continued for two weeks (R. 23). Review of the discharge note shows that the physical therapist discharged Plaintiff because he reported that his pain was a 5-8/10 in the beginning of his therapy session, was reduced to a 2/10 at the end of the session, but the pain returned to the same level as it was before the session once he returned home (R. 539). The physical therapist noted that Plaintiff had reached his goal for becoming independent with home exercise program on a regular basis, but had not reached the other goals pertaining to improving sleep, pain, and muscle tension. The physical therapist

recommended he return to his physician for further evaluation due to "insufficient gains expected with continued treatment" (R. 539). As instructed, Plaintiff saw neurologist Clark in March 2016, reporting some post-surgical improvement in his arms/shoulders but continued problems with his hands. Dr. Clark noted that Plaintiff "continues to have cervical pain, radicular pain down his arms into bilateral 4th and 5th digits. He drops things now and has to take long breaks while drafting at work." Dr. Clark assessed "on exam he has weakness in bilateral C8 myotomes, worse on the left. My EMG from August revealed chronic bilateral C8 radiculopathies." (R. 549). Dr. Clark opined that Plaintiff's repeat EMG in March 2016 showed essentially identical findings as in August (R. 551, 554). Thereafter, Dr. Clark's March 23, 2016 examination showed Plaintiff's strength was better, but his pain had increased. He recommended Plaintiff undergo steroid injections at C7-T1, but other treatment modalities may be needed if no improvement from the injections (R. 551).[1] Pain specialist Dr. Greenfield's records are consistent with Dr. Clark's records. In March 2016, Dr. Greenfield noted that Plaintiff reported his pain as a 5 on average, a 2 at best, and 9 at worst (R. 567). Dr. Greenfield opined that "the patient's pain has been refractory to simple and prescription analgesics, rest, and local measures. Currently the patient's symptoms are causing significant disruption of daily activities. In view of the patient's medically refractory pain, I will proceed with therapeutic intervention" (R. 568-569).

In April 2016, Plaintiff underwent several C7-T1 cervical epidural steroid injections, however the records reveal that despite some improvement Plaintiff remained symptomatic (R. 561-568). Most recently, in July 2017, Dr. Greenberg described:

---

[1] In his decision, when evaluating Plaintiff's subjective complaints and formulating his RFC, the ALJ discussed Dr. Clark's records only to the extent that in March 2016 "Clark observed normal fine finger movement and normal gait" (R. 25). None of Dr. Clark's other assessments or clinical findings indicating Plaintiff had deficits in his upper extremities were discussed in formulating RFC and weighing subjective complaints.

> Physical exam of the cervical spine reveals decreased range of motion in flexion, extension, lateral rotation and lateral tilt. He has parasthesias radiating into the right upper extremity into the shoulder, forearm and into the fourth and fifth fingers which have numbness. He also has pain radiating in a radicular fashion into the left upper extremity, down the arm into the forearm and also into the fourth and fifth fingers. He has weakness in grip strength bilaterally.

(R. 606). Based on this exam, Dr. Greenberg opined, "With regard to the cervical spine unfortunately despite having the cervical spine surgery as well as physical therapy and pain management including at least two epidural injections since the surgery, he continues to have discomfort as outlined above. We can refer him to another pain management specialist but I am not sure he is going to get much relief from this." (R. 607).

I find the medical evidence summarized above consistent with Plaintiff's testimony and other record evidence. All reveal Plaintiff suffers from decreased range of motion in his cervical spine, weakness of grip strength bilaterally, and related pain and numbness that radiates down his arm into his fingers (R. 548-49 (neurologist Clark, March 9, 2016); R. 551-552 (neurologist Clark, March 23, 2016); R. 605 (orthopedist Greenberg, July 18, 2017)).[2] The ALJ found Plaintiff's "degenerative disc disease of the cervical spine and status post cervical discectomy" a severe impairment, but concluded the upper extremity problems stemming therefrom did not affect his ability to perform work-related activities. Relatedly, the administrative evidence reveals limitations that affect Plaintiff's ability to work that were not included in the ALJ's hypotheticals to the VE.[3] Hence, I cannot conclude that substantial evidence supports the ALJ's RFC finding

---

[2] While Dr. Greenberg's examination occurred four months after the DLI, his examination was a week before the ALJ hearing and is consistent with the other evidence in the record concerning bilateral upper extremity radiculopathy and neuropathy and persistent pain despite multiple procedures (R. 607).

[3] At the administrative hearing, Plaintiff's attorney questioned the vocational expert about whether Plaintiff could perform the three jobs identified if the hypothetical person could only occasionally use his hands. The vocational expert testified that "[a]ctually if you only have

7

and his conclusion that Plaintiff can perform other jobs in the national economy. Nor can I find that the ALJ meaningfully conducted the proper legal analysis about the effect of his impairments on his RFC. *See generally Raduc v. Comm'r of Soc. Sec.*, 380 Fed. Appx. 896 (11th Cir. 2010) citing *Keeton v. Dep't of Health and Human Servs*., 21 F.3d 1064, 1066 (11th Cir. 1994). Of course, ultimately, under the statutory and regulatory scheme, a claimant's RFC is a formulation reserved for the ALJ, who must support his findings with substantial evidence. *See* 20 C.F.R. § 404.1546(c). This Court's task is simply to determine whether substantial evidence supports the ALJ's decision, not to substitute its judgment for that of the Commissioner. To the extent Plaintiff asks me to re-weigh the evidence or substitute my opinion for that of the ALJ, I cannot. However, where, as here, the ALJ's findings are not supported by substantial evidence, I must remand for further administrative proceedings.

2. *remaining issues*

As a result of this remand, it is unnecessary for me to discuss the remaining four issues. However, I note that the ALJ's proffered reasons for assigning "limited weight" to Dr. Greenberg's opinion seem insufficient, especially in light of its consistency with other record evidence. Dr. Greenberg opid that Plaintiff has "extreme limitations in the ability to use the upper extremities." In support of this opinion, Dr. Greenberg explained that "[b]oth upper extremities have neuropathy based on physical exam and EMG studies" and stated he had reviewed Plaintiff's medical history

---

occasional use of your hands you can't do unskilled work and he's not qualified really for anything else. He doesn't have transferable skills from other jobs" (R. 132). Had the ALJ's hypothetical incorporated limitations related to the use of his hands, the vocational expert may have reached a different conclusion regarding what jobs, if any, Plaintiff could do. *See, e.g. Davis v. Comm'r of Soc. Sec.*, case no. 6:12-cv-1694-Orl-26TBS; 2013 WL 6182235, *8 (M.D. Fla. Nov. 25, 2013) (remanding where ALJ failed to properly consider medication side effects that caused tremors in assessing RFC). *See also Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (in order for vocational expert's testimony to constitute substantial evidence the ALJ must pose a hypothetical question which comprises all of the claimant's impairments).

and medical records including treatment for his spine and extremities as far back as April 20, 2014 to the present (R. 609). The ALJ shall also reconsider the opinions of the State Agency medical consultant and other sources. Additionally, in the event that the ALJ determines Plaintiff is disabled, the ALJ shall assess whether substance abuse was material to disability.

Finally, as to Plaintiff's assertion that the ALJ was not properly appointed and lacked authority to decide his case, I find no merit. *See generally Lucia v. Securities and Exchange Comm.*, __ U.S. __, 138 S.Ct. 2044 (2018) (holding petitioner raised "timely" challenge to appointment of ALJ who heard his case because he first raised issue during administrative proceedings before SEC); *Sims v. Apfel*, 530 U.S. 103, 108 (2000). The Plaintiff, as the Commissioner notes, should have raised this complaint earlier. By failing to do so, the Plaintiff waived the issue. *See* doc. 26, citing *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) (holding that parties may not wait until court to raise a statutory "defect in the … appointment" of the official who issued agency's initial decision); *Elgin v. Dep't of Treasury,* 567 U.S. 1, 23 (2012) (plaintiff required to exhaust constitutional claim to administrative agency before seeking review in federal court). The Court rejects Plaintiff's argument that his Appointments Clause challenge is not untimely based on *Sims v. Apfel,* U.S. 103 (2000). Another judge in this district recently rejected a similar argument. *See Miaolino v. Comm'r of Soc. Sec*, case no. 2:18-cv-494-FtM-UAM, 2019 WL 2724020 (M.D. Fla. July 1, 2019) The *Miaolino* court explained that "*Sims* concerned only whether a claimant must present all relevant issues *to the Appeals Council* to preserve them for judicial review; the [Supreme] Court specifically noted that '[w]hether a claimant must exhaust issues before the ALJ is not before us.'"*Miaolino*, citing *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) (quoting *Sims*, 530 U.S. at 107). Because the issue is whether Plaintiff's challenge is timely being presented to this Court for the first time, *Sims*

is not applicable. As the *Miaolino* court indicated, in *Lucia, supra*, the Supreme Court did not make a blanket finding that all ALJs are subject to the Appointments Clause, but only that SEC ALJ**s** were so subject. At the time of the Supreme Court's decision, the SEC had only five ALJs. *Lucia*, 138 S.Ct. at 2049. In contrast, there are currently over 1,700 Social Security Administration ALJs. *Miaolino, supra,* at *7 citing ALJ Disposition Data FY 2019, *available at* [https://www.ssa.gov/appeals/DataSets/03_ALJ_Disposition_Data.html]. The SSA conducts hundreds of thousands of hearings and adjudicates hundreds of thousands of disability claims each year. As the Commissioner notes, the Social Security Administration has annually received about 2.6 million initial disability claims; annually completed about 689,500 ALJ hearings; and in 2018 took on average 809 days to process a claim from its initial receipt to an ALJ decision and more than 850,000 people were waiting for ALJ hearings. *See* doc. 26, citing SSA's Annual Performance Report, Fiscal Years 2018-2020, at 4, 42, 46 (2019). Following *Miaolino*, "If the courts were to apply *Lucia* to Social Security cases as Plaintiff argues this Court should, millions of cases would need be remanded for rehearing by a different ALJ. Given these important efficiency concerns and the Supreme Court's specific findings in *Lucia*, the Court is skeptical that *Lucia* is even controlling as to Social Security Administration ALJs." *Miaolino*, at *7.

    *D.*    *Conclusion*

For the reasons stated above, it is ORDERED:

1. The ALJ's decision is REVERSED, and the case is remanded to the Commissioner for further administrative proceedings consistent with this Order; and

2. The Clerk of Court is directed to enter judgment for Plaintiff and close the case.

DONE and ORDERED in Tampa, Florida on October 16, 2019.

_____
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE